IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JEFFREY KREUTZ,<br><br>Plaintiff,<br><br>v.<br><br>ORACLE AMERICA, INC. and ORACLE CORPORATION,<br><br>Defendants. | Cause No. CV 12-00057-BU-DLC-RWA<br><br>FINDINGS and RECOMMENDATIONS of the MAGISTRATE JUDGE |

Plaintiff Jeffrey Kreutz ("Kreutz") filed a Complaint and Demand for Jury Trial on August 28, 2012, averring two claims for relief: Count One (Breach of Contract); and Count Two (Wage Claim). By separate Order entered May 30, 2013, Count Two of Kreutz's complaint was dismissed. Kreutz filed a motion for summary judgment on December 6, 2013, seeking a ruling as a matter of law that his employment agreement was terminated for good reason, that Oracle breached the covenant of good faith and fair dealing, and that Kreutz is entitled to the sum of $377,909.16, plus pre-judgment interest. Defendants Oracle America, Inc. and Oracle Corporation (collectively "Oracle") filed a motion for partial summary judgment on December 6, 2013, seeking a ruling that Kreutz's alleged breach of contract claim based on a reduction in Kreutz' base salary fails as a matter of law. Both motions are accompanied by statements of undisputed facts and supporting briefs. The competing motions are opposed. The matters are ready for decision.

1

## FACTS

Kreutz went to work for RightNow Technologies, Inc. in Bozeman, Montana in 2004 as Product Manager. Kreutz was later promoted to Director of Product Release Management, and in 2008, was promoted to Vice President, Product Development, Operations.[1] Upon his promotion to Vice President, Product Development, Operations, Kreutz and RightNow entered into a hire letter, dated January 23, 2008, which contained the following provisions:

> Termination of Employment following a Change of Control: . . . you will receive the following benefits if ... your employment with the Company (or any successor company or affiliated entity with which you are then employed) is terminated by you for Good Reason within twelve months following the date of a Change in Control of the Company:
>
> (i) acceleration of 100% of your then unvested stock options in connection with the attendant stock option award, and all stock option awards made after the date of this letter, and subject to the terms and conditions of each such stock option agreement that is executed by you and the Company; and
>
> (ii) 6 months' salary continuation at your then current on target earnings (OTE).

"Good Reason" is defined in an attachment to the above letter as:

> . . . the occurrence of any of the following events following a Change in Control, except for the occurrence of such an event in connection with the termination of your employment by the Company (or any successor company or affiliated entity then employing you) for Cause, Disability or death:
>
> 1. the assignment to you of employment duties or responsibilities which are not substantially comparable in responsibility and status to the employment duties and responsibilities you held immediately prior to the Change in Control;
> 2. a reduction in your base salary as in effect immediately prior to the Change in Control or as the same may be increased from time to

---

[1] These titles were referred to as discretionary titles, as opposed to the titles used by the human resource department, such as Software Developer Level 3.

     time during the term of this Agreement; or
3.   requiring you to work in a location more than 50 miles from your office location immediately prior to the Change in Control, except for requirements of temporary travel on the Company's business to an extent substantially consistent with your business travel obligations immediately prior to the Change in Control.

The parties agree that in February of 2012, the value of a 6 month salary continuation at Kreutz's on target earnings, including gross salary and prorated target bonus was $109,500. The parties further agree that the value of the 100% acceleration of his unvested stock options in February of 2012 was $268,409.16.

  Oracle Corporation acquired RightNow on January 25, 2012. At that time, RightNow employed approximately 1,200 people. Oracle's acquisition of RightNow was announced on October 24, 2011. On or about January 25, 2012, there was a change in control when RightNow became a wholly-owned subsidiary of Oracle. For slightly more than a month after the change in control, RightNow continued to exist as a subsidiary while Oracle combined RightNow with Oracle America, Inc. RightNow was combined into Oracle America, Inc. in a Legal Entity Combination on March 1, 2012. As of December 21, 2012, Oracle Corporation and its subsidiaries employed 108,294 employees worldwide in 67 countries.

  Prior to the change in control, Kreutz was a valuable employee at RightNow and as Vice President, Product Development, Operations, was responsible for the following teams: current engineering, release management, documentation, and a number of quality assurance teams. The foregoing teams were comprised of 78 employees. Kreutz also jointly managed the upgrade engineering team, which was a team of approximately 64 employees and contractors. Kreutz contends, and Oracle does not disagree, that prior to the change in control, RightNow never

assigned employee's to Kreutz's group without his approval, no one on Kreutz's staff ever received a title or salary change without Kreutz's involvement or knowledge, that Kreutz was involved in RightNow's annual product planning process, annual product road map planning process, and in strategic planning regarding the products he was responsible for delivering. Kreutz was also involved in budgets for his teams, including headcount budgets, capital expenditure budgets, and operational expenditure budgets and he had visibility into what those budgets were. Prior to the change in control, Kreutz had authority to sign contracts up to a certain dollar amount, and to make operational expenditures out of his operational budgets without approval, up to approximately $5,000.

Following the change in control, Kreutz contends the upgrade and engineering team of approximately 64 employees was removed as one of his responsibilities and duties. Oracle does not disagree that the upgrade and engineering team was removed from Kreutz's responsibilities, but contends that Kreutz asked that the upgrade and engineering team be removed from his responsibility and that the decision to remove the upgrade and engineering team from Kreutz's responsibility was made in 2011 and was entirely unrelated to the change in control.

Kreutz also argues, and Oracle does not dispute, that the documentation team of approximately 10 employees was removed from Kreutz's responsibilities and duties. Oracle does not disagree that the documentation team was removed from Kreutz's responsibilities, but counters that the documentation team did not represent a significant portion of Kreutz's supervisory responsibilities, and that Kreutz was instead assigned supervisory responsibility for a team of quality assurance engineers, the majority of which worked in India. According to Oracle, the addition of the quality assurance engineers increased, rather than decreased, Kreutz's overall

supervisory responsibilities.

Oracle also does not disagree that it suspended Kreutz's budget and staff management authority and proposed to change his title from Vice President, Product Development, Operations to Vice President, Quality Assurance, but counters that the title of Vice President, Quality Assurance does not denote a lower status and that the other events which Kreutz complains about occurred during a very short period of time between January 25, 2012, and mid-February 2012, "as part of an extraordinary, complex and fast-paced 'mapping' process of the entire RightNow organization into Oracle. This extraordinary process was critical to successfully integrate the company into Oracle America, Inc. on a very tight time schedule, and because of its speed and complexity, could not include the level of manager input that was typical of ordinary day to day operations of the two companies." Document 53, p13-14 of 58. Oracle maintains that after the Legal Entity Combination on March 1, 2012, the ordinary day to day responsibilities associated with Kreutz's position did not change.

Following Change in Control, Oracle offered Kreutz a job on February 8, 2012. The Oracle offer letter of February 8, 2012, reads in part:

> Your position with Oracle will be effective upon a date to be determined by Oracle and will be contingent upon the successful completion of Oracle's background check process as well as your continued employment by RightNow until your employment commences with Oracle.
>
> We are pleased to offer you the position of Vice President, QA with Oracle.
>
> We are offering you a starting compensation at the annual rate of $210,000. In addition, you will be eligible to participate in the standard compensation for your position.
>
> After your employment commences with Oracle, you will continue to be eligible for severance benefits in accordance with the terms set forth in the applicable

> RightNow letter in the paragraph entitled "Termination of Employment following
> a Change of Control".

* * *

> During your employment with Oracle, you will be eligible for two retention
> bonuses, which are dependent on your continued active employment and
> attainment of certain performance objectives as determined by Oracle
> management.

* * *

> After you join Oracle, a proposal will be submitted to the Oracle Corporation
> Board of Directors requesting approval to grant you a non-qualified stock option
> to purchase 30,000 shares of common stock under the Oracle Corporation
> Amended and Restate 2000 Long-Term Equity Incentive Plan.

Mike Myer[2], Kreutz's boss at RightNow, testified in a deposition that Oracle's base salary offer of $210,000 "reflect[ed] prior salary, plus an increase in prior salary, plus bonus included."

Kreutz contends that his offer letter from Oracle stated that Kreutz could not exercise his right to severance payments until after his employment with Oracle commenced. Kreutz also maintains that another document provided by Oracle to Kreutz confirmed that an arbitration agreement must be signed in order to accept Oracle's offer of employment. Oracle counters that Kreutz misinterprets the offer letter, which reads: "After your employment commences with Oracle, you will continue to be eligible for severance benefits in accordance with the terms set forth in the applicable RightNow letter in the paragraph entitled "Termination of Employment following a Change of Control." Oracle also argues that reference to the impact of an employee' resigning before signing the Oracle offer letter set forth in the "Offer and Integration Readiness

---

[2] Kreutz states in his deposition testimony that Mike Myer was the Chief Technology Officer and Vice President of Product Development at RightNow.

Guide" did not apply to high level executives like Kreutz, and was only provided to RightNow managers to assist them in communicating to their subordinates regarding various aspects of the integration.

On February 13, 2012, Kreutz notified Oracle he was involuntarily terminating his employment effective March 1, 2012 for "Good Reason," contending that a change in his duties and responsibilities entitled him to the severance benefits under the RightNow hire letter. On February 28, 2012, Oracle, through Timi Baxter, the Senior Human Resources Director, Mergers and Acquisitions at Oracle America, Inc., advised Kreutz that he could file a claim for severance benefits "by providing details of the occurrence which you believe constitutes Good Reason as defined by your RightNow offer letter." Kreutz agreed to follow the process Oracle outlined and asked if he could submit his claim in late March, 2012. Oracle told Kreutz there was "no issue at all with the time frame."

On March 27, 2012, Kreutz submitted a 10-page claim letter to Oracle which outlined why his termination was for "Good Reason" under the RightNow hire letter. The letter reads, in part:

> My strong personal preference was to remain with Oracle in a role with similar responsibilities and status to the one I had at RightNow, so that I could continue to contribute to Oracle's success as I did at RightNow. However, between October 24, 2011 when Oracle announced its definitive agreement to acquire RightNow, and March 1, 2012 when the acquisition process was completed with Legal Entity Combination (LEC), I gained a more complete understanding of the details of my position should I accept the offer of employment from Oracle, including my role, the level of responsibility and status of my duties and responsibilities, and the specific projects which were assigned to me by Oracle. During this time, I experienced first-hand several occurrences of diminished employment duties, responsibilities and status, including events whereby Oracle reduced my job and title status, eliminated my autonomy and leadership capabilities, and diminished my effectiveness and performance capacity in my role. Based on an objective

7

> assessment of these experiences and insights, it became apparent to me that my employment status, duties and responsibilities changed substantially in many material and negative ways compared to the responsibilities and status I had at RightNow prior to Change in Control (CIC) on January 25, 2012.
>
> Since Oracle's employment offer was for a position with assigned employment duties and responsibilities that were not substantially comparable in responsibility and status to those duties and responsibilities that I held immediately prior to CIC, I determined that I had Good Reason to terminate my employment and trigger the severance benefits to which I am entitled under by RightNow employment contract dated January 23, 2008, set forth in the paragraph entitled "Termination of Employment following a Change in Control." As a result, and as we have communicated previously, I declined Oracle's offer of employment for these reasons and my employment with RightNow/Oracle was terminated for Good Reason effective March 1, 2012.

Kreutz' letter goes on to quote from the RightNow hire letter, which defines both Change in Control and Good Reason. Kreutz then advises Oracle:

> My claim for severance benefits is based on the first definition of Good Reason above, the assignment to me of employment duties or responsibilities which are not substantially comparable in responsibility and status to the employment duties and responsibilities I held immediately prior to CIC.

Kreutz, in his letter, then details 14 instances of diminished responsibility and status prior to and after January 25, 2012.

On April 24, 2012, Oracle told Kreutz they would respond to his request for the payments due under his hire letter on May 8, 2012. On May 8, 2012, Oracle notified Kreutz that the person reviewing his claim had a death in her family and that the response to his request for payments under his hire letter would therefore be delayed. Oracle told Kreutz they would contact him the following week regarding the status of the payments. Thereafter, Oracle determined that Kreutz was not entitled to any benefits under the RightNow hire letter, but did not communicate that decision to Kreutz until after he commenced this case.

8

In the complaint filed August 28, 2012, Kreutz alleges, among other things, that Oracle breached its contract with Kreutz in Montana and failed to pay wages in accordance with Montana law. Kreutz also alleges in his complaint:

16. During the period between October 24, 2011 and March 1, 2012, Plaintiff had the opportunity to work under Oracle's direction and experience multiple changes in his position and work environment as a result of the change in control.

17. Plaintiff's employment with Defendants, had he accepted their offer letter, would have been in a different position with different assigned duties and responsibilities that were not substantially comparable in responsibility and status to the employment and duties Plaintiff had prior to the change in control.

18. On February 13, 2012, Plaintiff notified Defendants he would involuntarily terminate his employment effective March 1, 2012 for "Good Reason" and that he was exercising his rights under the RightNow hire letter and recognized by Defendants in their February 8, 2012 letter.

## STANDARD

A party is entitled to summary judgment if it can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91L.Ed.2d202 (1986). On a motion for summary judgment, this Court must determine whether a fair-minded jury could return a verdict for the nonmoving party. *Id.* at 252, 106 S.Ct. 2505. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment; factual disputes which are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248, 106 S.Ct. 2505.

## DISCUSSION

**a.  Kreutz's Breach of Contract Claim**

Kreutz alleges that Oracle breached the January 23, 2008, RightNow hire letter when it refused to make severance payments after Kreutz terminated his employment for "Good Reason." The parties agree there was a January 25, 2012, change in control and that Kreutz submitted a claim for payment, all as prescribed in the RightNow hire letter. The parties also agree that Kreutz is entitled to severance payments if he terminated his employment for "Good Reason."

Kreutz maintains he had good reason to resign because after January 25, 2012, "Oracle assigned [Kreutz] 'employment duties or responsibilities which [were] not substantially comparable in responsibility and status to the employment and responsibilities [he] held immediately prior to the Change in Control.'" Document 38, p.12. Oracle disagrees.

The term "Good Reason" is defined in the attachment to the January 23, 2008, RightNow hire letter. In the context of the pleadings, the issue before the Court is whether Kreutz terminated his employment for "Good Reason" and is thus entitled to the amounts set forth in the January 23, 2008, RightNow hire letter. While the Court would agree there was some change in Kreutz's employment duties and responsibilities after January 25, 2012, there is a material issue of fact as to whether at least one of those changes took place prior to January 25, 2012, and there are also issues of fact as to whether other of the changes after January 25, 2012, would have continued beyond March 1, 2012, and whether those changes constituted a substantial change in employment duties and responsibilities. The presence of material issues of fact preclude entry of summary judgment in Kreutz's favor.

**b.    Kreutz's Covenant of Good Faith and Fair Dealing Claim**

Kreutz also argues in his summary judgment brief that Oracle breached the covenant of good faith and fair dealing when it failed to pay severance payments under the RightNow hire

10

letter. As a matter of law, every enforceable contract "contains an implied covenant of good faith and fair dealing." *Knucklehead Land Co., Inc. v. Accutitle, Inc.*, 340 Mont. 62, 172 P.3d 116, 121 (Mont.2007) (citation and quotation omitted). "[T]he covenant is a mutual promise implied in every contract that the parties will deal with each other in good faith, and not attempt to deprive the other party of the benefits of the contract through dishonesty or abuse of discretion in performance." *Phelps v. Frampton*, 339 Mont. 330, 170 P.3d 474, 482 (Mont.2007) (citation and quotation omitted). The standard of conduct imposed by the implied covenant is "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." *McCoy v. First Citizens Bank*, 335 Mont. 1, 148 P.3d 677, 681 (Mont.2006) (quoting *Story v. City of Bozeman*, 242 Mont. 436, 791 P.2d 767, 775 (Mont.1990)). A plaintiff need not first establish a breach of an express provision of the contract as a prerequisite to a claim for a breach of the implied covenant. *Id.*

While the Montana Supreme Court has made clear that "[a] breach of the underlying contract is not a prerequisite to a breach of the implied covenant of good faith and fair dealing." *Phelps*, 170 P.3d at 484, this is not such a case. Other than the facts associated with his breach of contract claim, and the claim that Oracle failed to pay severance payments under the RightNow hire letter, Kreutz has not alleged any additional facts that would support an independent claim for breach of the implied covenant of good faith and fair dealing. Because Kreutz's claim for breach of the implied covenant of good faith and fair dealing is duplicative of his breach of contract claim, it too presents genuine issues of disputed fact.

c.  **Oracle's request for partial summary judgment**

Oracle moves for partial summary judgment on a claim it characterizes as Kreutz's

11

breach of contract claim based on an alleged reduction in Kreutz' base salary. Oracle argues that Kreutz asserted this second breach of contract claim by means of supplemental interrogatory responses. While Kreutz may have sought discovery of items beyond the complaint, and arguably did not need to raise the salary issue in his claim for severance payments to Oracle, this Court is nonetheless obliged to consider Oracle's motion for partial summary judgment in the context of the complaint filed by Kreutz.

"Good Reason," as defined in the attachment to Kreutz's RightNow hire letter, exists after a change in control if there is: (1) a substantial change in employment duties and responsibilities; (2) a reduction in base salary; or (3) a change in work location. Kreutz's complaint alleges "Good Reason" based on a substantial change in employment duties and responsibilities. A substantial change in employment duties and responsibilities is the only grounds for "Good Reason" addressed in Kreutz's motion for summary judgment. Under the plausibility standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 1949-50 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), Kreutz's complaint does not aver a breach of contract claim predicated on a reduction in his base salary. Therefore, Oracle's partial motion for summary judgment on this point is premature.

For the reasons discussed above, the undersigned Magistrate Judge issues the following:

## RECOMMENDATION

That Kreutz's motion for summary judgment be denied, and that Oracle's motion for partial summary judgment be denied.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS &

## RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Kreutz and Oracle may serve and file written objections to this Findings and Recommendation within fourteen (14) business days of the date entered as indicated on the Notice of Electronic Filing. Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation. Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

This is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.Civ.P. 4(a)(1), should not be filed until entry of the District Court's final judgment.

Done and dated at Butte this 22nd day of May, 2014.

RICHARD W. ANDERSON
UNITED STATES MAGISTRATE JUDGE

13